A05A0149. CURRID v. DeKALB STATE COURT PROBATION DEPARTMENT et al.
(618 SE2d 621)

RUFFIN, Chief Judge.

Vincent Currid died after falling from a garbage truck while performing court-ordered community service for the DeKalb County Public Works Department. Currid's estate and his father ("Appellants") brought a wrongful death action against DeKalb County, its employees Vicki Carter and Harrison Hoskins, the Georgia Department of Corrections ("DOC"), and its employee Mattie Gabriel. All the defendants moved for summary judgment. The trial court granted summary judgment on all claims to Carter, Gabriel and the DOC; granted summary judgment to DeKalb County, except to the extent the county waived immunity by purchasing an automobile liability insurance policy pursuant to OCGA § 33-24-51; and denied summary judgment to Hoskins. This appeal followed. For the reasons that

---

follow, we affirm the grant of summary judgment to Carter, Gabriel and the DOC, but reverse the grant of summary judgment to DeKalb County.

Summary judgment is proper where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.[1] "Once the movant has made a prima facie showing that it is entitled to judgment as a matter of law, the burden shifts to the respondent to come forward with rebuttal evidence."[2] "We apply a de novo standard of review to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[3]

Viewed in this light, the evidence shows that the State Court of DeKalb County sentenced Currid to 12 months probation and ordered him to serve 40 hours of community service as a condition of his probation. Currid initially met with both a DeKalb County probation officer and community services coordinator Vicki Carter to discuss his probation, and he signed a waiver of liability for injuries he might receive while performing community service.

On September 20, 1999, Currid reported to the central DeKalb probation office to begin performing community service. Carter and Mattie Gabriel, a DOC employee, were making community service assignments that day. They sat next to each other at a table where probationers came to sign in for community service. Carter was overseeing misdemeanor probationers for DeKalb County, while Gabriel was overseeing felony probationers for the DOC. Both misdemeanor and felony probationers were assigned on a first-come, first-served basis to the community service agencies that had requested workers for the day. Gabriel informed Currid that he would be working with the sanitation department. Currid did not receive any training or safety equipment before being sent to work at the sanitation department.

At the sanitation department, Currid was assigned to a garbage truck driven by Harrison Hoskins. Currid was given gloves, but wore his own clothes and shoes, although the sanitation department requires its employees to wear steel-toe shoes. In fact, probationers who do community service with the sanitation department are generally given gloves, but none of the other equipment that is mandatory for employees.

---

[1] See *Katz v. Hosp. Auth. of Rabun County*, 254 Ga. App. 209, 211 (561 SE2d 858) (2002).

[2] (Punctuation omitted.) *Gentile v. Bower*, 222 Ga. App. 736, 737 (477 SE2d 130) (1996).

[3] (Punctuation omitted.) *Bonner v. Southern Restaurant Group*, 271 Ga. App. 497 (610 SE2d 129) (2005).

Currid and sanitation worker Antonio Simpson rode inside the cab of the truck until they got to the first stop on the route. At the first stop, Currid got on the rear of the truck, and Hoskins instructed him how to stand on the steps at the rear of the truck, how to get off the truck, and how to operate the levers for trash compaction. They then began to collect garbage on the route.

The garbage truck which Currid rode has a warning sign on it stating that no one should ride on the steps on the back of the truck when the truck is exceeding 10 miles per hour or traveling more than 2/10 of a mile between stops. Currid and Simpson remained on the rear of the truck, however, as it made a left hand turn from a residential neighborhood onto six-lane Lawrenceville Highway, which has a 35 mile per hour speed limit. Hoskins was driving about 15 miles per hour. As the truck turned from Lawrenceville Highway onto a side street, Currid fell off the back of the truck, and ultimately died as a result of the injuries received.

1. Preliminarily, we must address several shortcomings in the Appellants' brief, which have greatly hampered our review. First, Appellants have submitted a compound enumeration of errors in violation of this Court's rules.[4]

> Our requirements as to the form of appellate briefs were created not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court; a party will not be granted relief should we err in deciphering a brief which fails to adhere to the required form.[5]

Furthermore, the sequence of Appellants' argument does not follow the enumeration of errors, making it difficult for the court to identify which arguments apply to each alleged error.[6] And, although Appellants provide a detailed factual summary, they have not related these facts to the appropriate analysis, leaving us to determine the facts which might support each argument. We take this opportunity to remind counsel that failure to adhere to this Court's rules may subject the offending party and/or counsel to a finding of contempt and/or dismissal of an appeal.[7] Nonetheless, to the extent we are able

---

[4] See *Colonial Bank v. Boulder Bankcard Processing*, 254 Ga. App. 686, 688 (563 SE2d 492) (2002).

[5] Id.

[6] See Court of Appeals Rule 25 (c) (1); *Spooner v. City of Camilla*, 256 Ga. App. 179, 180 (1) (568 SE2d 109) (2002); *Bruce Tile Co. v. Copelan*, 185 Ga. App. 469, 470 (1) (364 SE2d 603) (1988).

[7] See Court of Appeals Rule 7.

to ascertain those errors properly raised and preserved with argument and citation, we have attempted to do so.[8] All other arguments are deemed abandoned.[9]

2. For the reasons set forth in Division 1, Appellants' arguments on appeal are not entirely clear. Appellants contend that the trial court erred in granting summary judgment in favor of various defendants. Appellants also cite generally to several legal principles, which they arguably contend support their claims. Specifically, Appellants cite to OCGA § 42-8-71 (d) (the "Community Service Act"), which governs participation of probationers in community service programs. Appellants also point to DeKalb County policies, which allegedly were violated. Keeping these legal principles in mind, we address whether the trial court erred in granting summary judgment to the various defendants.

The Community Service Act limits the liability of an agency and its employees for actions taken as part of a community service program for probationers. An agency or employee has immunity from claims of ordinary negligence,[10] and can only be held liable for actions "which constitute gross negligence, recklessness, or willful misconduct."[11] Therefore, DeKalb County, the DOC, Carter and Gabriel ("Appellees") are entitled to summary judgment if they can show that, as a matter of law, the record contains no evidence that their actions towards Currid in the community service program constituted gross negligence, recklessness, or wilful misconduct.

"Gross negligence is defined as the failure to exercise that degree of care that every man of common sense, however inattentive he may be, exercises under the same or similar circumstances; or lack of the diligence that even careless men are accustomed to exercise."[12] Recklessness is a conscious disregard for the safety of others.[13] Wilful misconduct "is based on an actual intention to do harm or inflict injury."[14]

---

[8] Appellants also impermissibly raise several arguments for the first time in their reply brief. See *Miners v. State*, 250 Ga. App. 443, 446 (3) (550 SE2d 725) (2001); *Owens v. State of Ga.*, 241 Ga. App. 140 (4) (525 SE2d 150) (1999). We do not address these three arguments: (1) that the waiver Currid signed was invalid because it violated public policy; (2) that DeKalb County failed to conduct a proper police investigation into Currid's death; and (3) that DeKalb County's automobile liability waiver does not supersede the county's liability under the Community Service Act.

[9] See Court of Appeals Rule 25 (c) (2).

[10] See *Dept. of Human Resources v. Mitchell*, 238 Ga. App. 477, 478 (1) (518 SE2d 440) (1999) (physical precedent only).

[11] OCGA § 42-8-71 (d).

[12] *Levine v. Keene*, 178 Ga. App. 832 (344 SE2d 684) (1986); see OCGA § 51-1-4.

[13] See *Arrington v. Trammell*, 83 Ga. App. 107, 111-112 (62 SE2d 451) (1950).

[14] *Chrysler Corp. v. Batten*, 264 Ga. 723, 726 (3) (450 SE2d 208) (1994).

(a) Appellants contend that genuine issues of material fact exist as to whether DeKalb County was grossly negligent (1) in failing to ensure that Currid was placed with an appropriate court-approved agency to perform his community service, and (2) in assigning him to ride on the back of a garbage truck without proper safety equipment and training.

Agencies such as the DeKalb County Public Works Department must file an application with the court before they may participate in a community service program for probationers.[15] In arguing that DeKalb County was grossly negligent because it did not satisfy this requirement, Appellants point to interrogatory responses of former DeKalb County State Court Chief Judge McLaughlin. Judge McLaughlin stated that, to his knowledge, he had never signed any documentation authorizing the sanitation division of the DeKalb County Public Works Department to participate in the community service program. Appellants ignore, however, the fact that such an application is in the record, signed by Judge Smith of the DeKalb County State Court. The trial court concluded that this application authorized the Public Works Department to utilize misdemeanor probationers, and we agree. We also find no support for Appellants' contention that the application is invalid because it describes the type of work to be done by probationers as "manual labor" rather than specifying "work[ing] as refuse collectors on the back of garbage trucks." As the DeKalb County Public Works Department was authorized to utilize probationers for community service work, Appellants have shown no genuine issue of material fact that, simply by placing Currid there, DeKalb County was grossly negligent, reckless, or committed wilful misconduct.

Appellants assert that genuine issues of material fact exist as to whether DeKalb County, through its Public Works Department, was grossly negligent, reckless, or committed wilful misconduct in assigning Currid to ride on the back of a garbage truck with inadequate safety equipment and training. The sanitation department requires garbage collectors to wear safety shoes; however, Currid was not given shoes. A sanitation department employee testified that the safety shoes provide better traction than athletic shoes, which Currid wore. A supervisor testified that it would be a violation of department policy for an employee to ride on the back of a garbage truck without safety shoes. In fact, Hoskins testified that if an employee reported to work without safety shoes, he would not let the employee get on the

---

[15] See OCGA § 42-8-71 (a).

truck. Nonetheless, probationers generally were not issued any of the uniform that employees wear, except gloves. This, of course, was the case with Currid.

Currid did receive the same training that a new employee for the same job would have received. The only training given to new employees is a hands-on orientation with the truck driver, like that given to Currid. At the time he fell, however, Currid was riding on the back of the truck when it was going more than ten miles per hour, on a busy highway. There is evidence that this was in violation of posted rules and sanitation department policy.

"When facts alleged as constituting gross negligence are such that there is room for difference of opinion between reasonable [people] as to whether or not negligence can be inferred, and if so whether in degree the negligence amounts to gross negligence, the right to draw the inference is within the exclusive province of the jury."[16] Viewed in a light most favorable to Appellants, the evidence is that Currid was assigned to ride on the back of a garbage truck without safety shoes which employees performing the same job are required to wear, and which would have provided better traction than the shoes he wore. At the time he fell, he should not have been riding on the back of the truck because it exceeded 10 miles per hour on a busy roadway. Appellants have shown facts sufficient to raise a jury question as to gross negligence on the part of DeKalb County.[17] On motion for summary judgment, we cannot resolve the facts; a jury must decide whether this evidence supports a finding of gross negligence.[18]

Additionally, the trial court granted summary judgment to De-Kalb County on the basis of the waiver Currid signed. The trial court held that this waiver barred Appellants' claims against Carter and DeKalb County, except to the extent of the county's automobile liability insurance. The waiver provides, in pertinent part:

I will assume liability for any bodily or personal injury received as a result of performing this community service. I will not institute any proceedings against [any court approved agency, its employees, agents, officers, and supervisors] . . . Probation Officials, or any party associated with the community service . . . because of any injury arising out of

---

[16] (Punctuation omitted.) *Trustees of Trinity College v. Ferris*, 228 Ga. App. 476, 477 (1) (491 SE2d 909) (1997).

[17] See *Bostwick v. Flanders*, 171 Ga. App. 93, 94 (318 SE2d 801) (1984); *Sumter Milling & Peanut Co. v. Singletary*, 79 Ga. App. 111, 115 (2) (53 SE2d 181) (1949).

[18] See *McFann v. Sky Warriors, Inc.*, 268 Ga. App. 750, 759 (4) (603 SE2d 7) (2004) (physical precedent only).

this community service or because of any injury sustained while going to or from any location where such community service is or is to be performed.

In *Turner v. Walker County*,[19] we held that an almost identical waiver would protect a county and its employee from liability in a wrongful death action, unless wilful and wanton misconduct was shown.[20] Appellants argue that there was sufficient evidence of gross negligence, recklessness or wilful misconduct to create a jury issue on the applicability of the waiver to their claims. As discussed herein, genuine issues of material fact exist as to whether DeKalb County's actions constitute wilful misconduct, and the trial court thus could not grant summary judgment to DeKalb County on this basis, either.[21] We therefore reverse the trial court's grant of summary judgment to DeKalb County.

(b) While Appellants have described the responsibilities of the DOC under the community service program, they have not identified facts which demonstrate that the DOC violated its responsibilities, or analyzed how the law would apply to the relevant facts.[22] Thus their enumeration of error with regard to the DOC is unsupported and deemed abandoned.[23]

(c) Appellants allege that genuine issues of material fact exist as to whether Gabriel and Carter were grossly negligent, reckless or committed wilful misconduct in assigning Currid to a community service program and supervising him. Appellants allege that Gabriel and Carter did not ensure that the agencies where probationers were performing community service had adequate safety training for the probationers. The limited evidence cited by Appellants, however, does not rise to the level of gross negligence, recklessness, or wilful misconduct. Gabriel and Carter are thus entitled to summary judgment as to all claims against them.

Appellants also contend that Gabriel and Carter are not entitled to official immunity because, even if there is no evidence of gross negligence, there is evidence of ordinary negligence in the performance of their duties as community service coordinators. We need not reach this issue, however, because even if Gabriel and Carter were not entitled to official immunity due to ordinary negligence, they

---

[19] 200 Ga. App. 565, 566 (1), (2) (408 SE2d 818) (1991).

[20] See id.

[21] See id. at 566 (2).

[22] See *Dixon v. MARTA*, 242 Ga. App. 262, 266 (4) (529 SE2d 398) (2000).

[23] See *Higgins v. State*, 251 Ga. App. 175, 178 (3) (554 SE2d 212) (2001).

would still be entitled to immunity under the Community Service Act[24] and the waiver executed by Currid.[25]

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Barnes, J., concur.*

DECIDED JULY 12, 2005 —
RECONSIDERATION DENIED JULY 28, 2005 — 

*Martin & Jones, Samuel L. Starks,* for appellant.
*Miller, Hamilton, Snider & Odom, Wade W. Mitchell, Robert D. Ware,* for appellees.

---

[24] See *Mitchell,* supra at 480-481 (2).
[25] See *Turner,* supra.